(Summit County Court of Common Pleas.)

EDWARD OVIATT v. THE AKRON STREET RAILROAD COMPANY et al.

1. The use of a public street by a street railway, with single or double tracks laid along the middle line of the street, adapted to the legally recognized plane of the traveled part thereof, constructed and operated in the usual way, either by horse power or electricity, for carrying passengers, falls within the purpose for which such streets are created and maintained, and the abutting owner cannot recover compensation for such use, unless he has shown that he will suffer some special injury to himself by being deprived of light, air, or that free access to his premises which otherwise he would continue to enjoy rightfully.  For such special injury to himself, he may recover compensation under the rule provided by the constitution.

2. This principle will apply under a grant and franchise, to continue twenty-five years, authorizing the company to construct, maintain and operate a street railroad with single or double track and suitable side tracks and turnouts, where the company having constructed a single track road as being adequate for the then public requirements, but afterward, within the twenty-five years, undertakes to enlarge its facilities b cosntructing additional side tracks or turnouts to meet the increased demands of the public

3. The fact that such double track, side-track or turnout would interfere with express wagons or teams, from backing up to the curb and standing crosswise on the street in front of plaintiff's abutting premises, to receive and deliver express freight, thereby making his premises less valuable as and for an express office and wareroom, does not constitute such injury as entitles him to an injunction to restrain the railroad company from constructing such side track.

(April Term, 1895.)

---

VORIS, J.

Motion to continue preliminary injunction to restrain street railway company from laying down an additional side track in the public street in front of plaintiff's abutting premises, which premises are located on grade of sidewalk and curb, and occupied as an express office; the street railway company claiming the right to so construct by grant and ordinance of the city of Akron, which gave authority to the defendants to construct, maintain and operate a street railway system by single or double tracks with side tracks, turnouts, etc., by electricity; the franchise to continue in force twenty-five years from its date, two-thirds or more of which time has yet to run.  The defendant under the grant having construcetd a single track road with what it then considered suitable side-tracks and turnouts six or seven years ago, and ever since has operated the same, and now proposes to construct and operate a side track or turnout in the street on grade of pavement, abutting plaintiff's premises, as part of its railway system.

The foregoing facts are not disputed, nor is there any contention that the side track is not being constructed in the most approved manner now in use, and pursuant to the ordinance that among other things it requires the double track to be laid equi-distant from center line of the street at proper distance for passage of cars, or that it is not fairly adjusted to the grade of the street which is paved with stone; but it is said by the plaintiff, that the defendant having constructed and operated only a single track railway, with side tracks and turnouts adequate to suit its own convenience when it constructed its road, having then exercised its election, cannot now construct other side tracks or turnouts under its grant from the city, without the consent of plaintiff, or payment of damages.

Is the election of defendant in that regard final, or may the railway company so enlarge its facilities by virtue of its grant, as the future public convenience may require? That defendant railroad company may increase its car service, by additional and improved cars, and by making more trips per day, is too clear for any rational doubt. To increase its number of trips, makes an additional number of side tracks and turnouts indispensable; then on what principle can the right to lay down the necessary side tracks or turnouts be denied? The same right that gives defendant authority to improve its car service, impliedly gives it the right to increase or enlarge its permanent structures requisite to enable it to so improve its car service. Rights which in no reasonable sense were abrogated or yielded up by reason of the fact that defendant made its improvement with reference to the public needs at the time it constructed its railway.

It seems to the court absurd to say that a franchise granted for a street railway system in a rapidly growing city, for twenty-five years, the wants of which are in embryo, that its owner must make an election to start with, and proceed to construct and operate upon a basis that will conclude it from any further enlargement of its facilities, except upon the condition of making new appropriations and securing new grants, as increased facilities are demanded by the public. The contrary view, that it would be compelled by the public to enlarge as the public convenience requires, seems more reasonable.

It is objected, that the side track is to be laid to afford facilities required by reason of the extension of the railway to Cuyahoga Falls, and Silver Lake, and to aid the line to Cleveland. This is legitimate. The statute provides that a street railroad may, with the permission of the city duly granted, extend its tracks, R. S. 2505; and sec. 3437 authorizes street railways with single and double tracks, side tracks and turnouts, to be constructed within or without, or partly within and without any municipal corporation.

The existence of a public street implies that it is subject to any appropriation by the public for any improved facilities which are reasonable and lawful for the better enjoyment of the uses and purposes for which streets are ordinarily used; and for all time to come. The title to the street is a fee in the municipality, held in trust to and for the uses and purposes of a street. R. S. 2601. The controlling purpose being to provide for the public, practical and convenient means of travel. What these uses and purposes are, must be defined not upon conditions existing at the time of the dedication or appropriation of the land for the street, or of granting the franchise, but upon such present and future conditions as may arise by reason of the expansion of the municipality in all the legitimate developments of urban existence.

The rights which the abutting owner, other than as one of the public, may exercise in the lands within the street, depend upon the extent of the

use which the public needs reasonably require at any given time, as and for a public street. In a mere village, a narrow roadway on the original surface, may be all that is required. As it increases in population, grading, curbing, guttering, sewers, sidewalks and paving become essential improvements, to which the whole width of the street must yield. This growth also may demand water and gas mains, hydrants, lamp posts, over-hanging wires, street railway tracks, etc., all of which uses are implied in the trust estate held by the municipality expressed in the terms, "to and for the uses and purposes of a street."

In the village, the public use may be very meagre. In the populous city, radically exclusive of all private use of the abutting owner that may interfere with the public convenience, except that of access to and from his abutting premises. The abutting owner's right to compensation in case of any particular use of the street, depends upon the fact whether the proposed use is within or without the purposes for which public streets exist. If the contemplated purpose is within the proper use of the street, then the abutting owner has no ground for complaint. If not, the proposed use would be a perversion of the street, a violation of the trust vested in the public, and would entitle the abutting owner to compensation to the extent of the injury done. The rights of the abutter to special, private enjoyment of the lands of a public highway are accidental, and exist as the public convenience is urgent or insignificant. In a city, the whole width of a street may be required. In the country, the abutter may plant and harvest his potatoes along the margin of the traveled road-bed. But his easement of light and air, and access to and from the street is his property, the enjoyment of which may not be taken or substantially injured without right to compensation. But the other rights spoken of are incidental, depending wholly upon the public needs, and must yield whenever the public use requires it. As to them the public right is paramount. As to the others, his right is inviolate, except upon the terms of compensation.

The use of streets for street cars, is as much within its legitimate public function and grant, as curbing, guttering, paving and putting sidewalks thereon, and no more an infringement of the appurtenant private use, than the construction of sewers, water mains, gas pipes, so long as the public use is reasonably exercised and does not wrongfully violate private right by misuser. The public use is defined by statute, (R. S. sec. 2601), as being co-extensive with "a conveyance in fee in the municipal corporation of the parcel or parcels of land designated in the plat as streets, to be held in the corporate name in trust to and for the uses and purposes of a street."

Ranney, J., says in Railway Company v. Comminsville, 14 Ohio St. 523, 544: "The lawful right of one of these companies to occupy and use in the manner and for the purposes provided by law, a public street, when no special or particular injury is done to any individual, cannot be reasonably doubted." * * * "In either of the modes known to our laws, by which lands are acquired for a public highway, an interest commensurate with the attainment of the objects of the acquisition, vests in the public at large, and is necessarily placed under the exclusive control of the law-making power. Whatever is fairly within the contemplation of a grant, whether voluntary or forced, and necessary to its beneficial enjoyment, is within the legal operation of the instrument or proceeding by which it is effected." (id. p. 544.)

Streets are essentially permanent physical conditions of city existence, and when appropriated to the public as part of the street system, imply, as fast as the needs of the public require, that they will be improved

in a manner adequate to reasonably meet the public requirements. The fact that the municipality reasonably delays making, or authorizing expensive improvements, is not to be treated as a waiver on its part of its right or intention to properly improve the street when it becomes in its discretion reasonably proper so to do. And what is reasonable, is wholly within the discretion of the municipal authorities, so long as such discretion is not abused, and comes within the provisions of the statute.

Quoting further from 14 Ohio St. 544-5, "Among the most obvious of the incidents attending the acquisition of land for a common highway, is that of improving, repairing and maintaining it in the best possible manner, to facilitate travel and transportation. By what means or agencies this end shall be accomplished, is a matter of purely legislative discretion, with which the owner of the land has no concern, except as one of the public at large, and as such, conclusively bound by the action of their common representative—the legislative body." Again he says, "We see nothing in the street railroad act, which induces the belief, that the legislature intended to authorize either companies, or public authorities, to grant to railway companies anything more than an interest in the public easement; nor do we see any reason to doubt, that such a location may ordinarily be made, as to bring the necessary structures for the use of these companies within that interest, and without any invasion of private rights. (Id. 549.)

We do not think that the location of a street railway track with its side tracks and turnouts on the grade of a paved street, if properly constructed, would be such invasion of the private rights.

The finding of fact of the trial court, upon which the doctrine of the Comminsville case turned in the Supreme Court, was that the railway track laid upon the side of the highway as proposed, would be an obstruction to the convenient access to the house and other improvements on the side of the highway; the effect of which would be that the abutting owner would sustain special and peculiar injury by reason of depriving him of the convenient egress and ingress of his premises to and from the street; his easement of the street for this purpose, and his property. Which fact being established, there could be no escape from the conclusion that the abutting owner was entitled to compensation to the extent he was deprived of his property under the rule prescribed by the constitution.

If the case at bar and the Comminsville case were in their material facts analogous, we would have no difficulty in determining the rights of the parties before the court in favor of the plaintiff; but the two cases are not alike. The time that elapsed between commencing this action and constructing defendants' railway, are widely different; the manner of affecting the plaintiff's premises, and the nature of the injury complained of, are not identical.

How the side track affects plaintiff's property abutting upon the street is alleged in his petition as follows: "Plaintiffs said premises now are and for a long period of time have been used for the purpose of an express room and express office, and have been specially fitted and arranged, at great expense, for such purpose. In order to conduct the said business thereof, it has become and still is necessary to stop with teams and wagons in the said carriage-way or roadway immediately in front of the plaintiff's said premises for the purpose of loading, unloading, receiving and delivering such freights and other matter as has been and still is handled and transported in the conduct of such express business.

"At very frequent intervals of each day, in order to conduct said express business, it is absolutely necessary to back up the wagons of said express company to the curbing in front of their office in order to load and

unload their said wagons. The length of a wagon with a horse attached being about twenty feet, and very frequently it is necessary that two or three of such teams have to be located before said express office at the same time.

"If the defendants be permitted to construct and operate the said street railway in the manner above mentioned, and as they are now seeking and threatening to do, the ingress to and egress from plaintiff's said premises for the purposes of so carrying on the said express business will be to such an extent obstructed and impaired as to make it dangerous and impossible to further use and employ the said premises for the uses and purposes to which they, as aforesaid, now are and have been for many years devoted."

Does the grievance complained of, create an invasion of plaintiffs' abutting premises? He can only recover for the special injuries affecting his said premises, which are specially averred to mainly consist in the effect the side track will have upon the ingress and egress thereof. The tracks being placed on grade of the pavement of the street, when not occupied by cars, invade no private right of plaintiff. The side track in no substantial degree affects the ingress or egress of his premises to or form the street. But the defendant may so occupy the side track in front of plaintiff's premises by its cars, for an unreasonable length of time, as to encroach upon plaintiff's easement of ingress and egress, and thereby commit a wong for which plaintiff may have redress. But for this, he has an adequate remedy, when the wrong is either threatened or inflicted. But that the defendant will wrongfully use its side track, is not before us for adjudication.

We may grant that the cars standing on the side track, or passing over same at frequent intervals, would seriously affect the business of the express company, and would hinder its loading and unloading packages in the manner indicated in the petition. But so far as this is an incident to the increased needs of the traveling public, exercised in a reasonable manner, the plaintiff cannot complain. Both the express company and the defendant must exeorise their rights in the public street reasonably, within the maxim, *sic utere tuo ut alienum non laedas*, and each will be liable to the other for injuries resulting from abuse of their respective rights. Neither have an exclusive right to the street, any further than a reasonable exercise of their rights may, for the time being, be exclusive; but the transit of street cars, and time taken for getting on and off, is no more an exclusive use of the street than the reasonable use of the same by the express company. But the express company has no right to cumber the street to twenty feet from the curb, by backing its wagons to the curb, its teams standing crosswise on the street to the hindrance of the public using the street. No abutting owner acquires a right, no matter how long continued, to enjoy a privilege in the street that operates as a public nuisance. Whether backing the teams of the express company across the street is a nuisance, or not, depends entirely upon the public needs of the place. On Market street it might not be a nuisance; on Howard street, it might.

A street car railway, instead of creating an additional burden upon the street, is but another and modern mode of relieving public streets from the pressure dense populations force upon them—in fact relieves them from the burdens the old modes of travel would still impose. The greatest thoroughfare on the continent (Broadway, New York City,) a few years ago was rendered almost impassable by the glut of horses, wagons, omnibus lines, cabs, carriages, and pedestrians; but the street car raised

the embargo, and makes possible, what before was an intolerable burden for many years.

To hold that because the street railway was a new and unheard-of instrumentality, when Broadway was dedicated to the public, and therefore a perversion of the uses of the street, would be absurd, and a stumbling block to reasonable progress, and its use much less to the inconvenience of the abutting owners than the omnibus lines that straggled all over the traveled streetway at will of the drivers.

The operation of a street railway system is in no sort an exclusive use of the street, other than that its railroad tracks constantly occupy part of the street bed between the termini of the road. Its operation in a reasonable manner, is no more exclusive than the use of the street by omnibus lines, freight wagons, pleasure carriages, bicycles, or the wagons and teams of the express company.

As to the use of a public street for the purposes for which streets are established and maintained, the abutting owner has no greater right than any one else of the public, except that he has the easement of reasonable access to and from his premises, and the street as appurtenant to his premises, which cannot be taken from him without his consent, only on the terms of compensation; but as we have shown, a street railway constructed and operated in the usual mode, is not, as matter of law, such appropriation of the street, as entitles the abutting owner to compensation. To enable him to recover this, he must show some special or peculiar injury to his appurtenant rights to the street.

We think the following to be a fair statement of the rule as announced by a very decided weight of authority: The use of a public street by a street railway, adapted to the legally recognized plane of the traveled street, operated in the usual way, either by horse power, electricity or cable, for carrying passengers, falls within the purposes for which such streets are created and maintained, and the abutting owner cannot recover compensation for such use, unless he has shown that he will suffer some special injury to himself by being deprived of light, air, or that free access to his premises which otherwise he would continue to rightfully enjoy.

Lewis on Eminent Domain, 124; 6. Am. Railroad & Corporation Rep. 320, also 377; Hobart v. Milwaukee Railroad Co., 27 Wis. 194, 9 Am. Rep. 461; Halsay v. Rapid Transit Co., N. J. Eq., 20 Atlantic R. 859; Street R'y Co. v. Cumminsville, 14 Ohio St. 523; Lockhart v. St. R'y Co., (Pa. St.), 21 Atlantic Rep. 26; Koch v. North Avenue R. R. Co., (Md.), 23 Atlantic R. 463; for analogous case, see 27th Wis. 194.

In the application of this rule we hold that the plaintiff had no easement in the street for backing up teams to the sidewalk for the purpose of loading and unloading freight, and the interference with such use of the street, by laying the side tracks of defendant's street railway in front of plaintiff's premises affords no ground for an injunction.

In any view of the case, we think the lapse of time since the franchise was granted, and the railway was constructed and operated as a single track road, leads us to the conclusion that the plaintiff was either compensated for the damages, if any, resulting to his premises by reason of the grant and to the extent of its provisions, or in fact that he waived the same, or has remained so long passive, that he cannot prevent, by injunction, the completion of the enterprise as proposed. If he has, or will suffer any special injury by the location and operation of the side track or turnout, he has an adequate remedy at law, though injunction be denied. We think the plaintiff has permitted the defendant to go too far in developing its railway system and spending its money, to tie up this enlarge-

ment of its system so long as it keeps within the provisions of the statutes and the grant from the city.

The continuance of the order denied.

Oviatt, Allen & Cobbs, for plaintiff.

Sadler, Atterholt & Marvin, for defendant.